425 A.2d 765

**Judith C. RECKTENWALD**

v.

**James R. RECKTENWALD, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed Feb. 6, 1981.

---

Robert V. Campedel, Clairton, for appellant.

George Retos Jr., Washington, for appellee.

John M. Crimmins, Pittsburgh, for participating party.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

CERCONE, President Judge:

This is an appeal from an order of the Greene County Court of Common Pleas dismissing James Recktenwald's exceptions to the findings of fact of a master appointed to oversee the sale of 131.32 acres of farm land which the parties herein presently hold as tenants-in-common, and to oversee also the subsequent partition of the proceeds. James Recktenwald raises seven questions on appeal.[1] We need only consider two questions generally raised, because of the disposition of the case we make today: what effect, if any, does a master's finding of nondivisibility have in an action for the partition of former entireties realty? and when is the proper time to except to a master's finding on the amount of an equitable lien to which a property is subject?[2]

Until their divorce August 26, 1976, the parties held the acreage in question as tenants-by-the-entireties. The tenancy was automatically transmuted into a tenancy-in-common upon their divorce by virtue of the Act of May 10, 1927, P.L.

---

1. Appellant's brief sets forth the following questions: "1) Whether or not under the evidence and facts of this case the applicable Pennsylvania law requires the Master in Partition to first physically divide the premises into equal purparts to be offered in distribution to the parties rather than sell the premises at public sale and distribute the proceeds between the parties? 2) Whether or not a wife who has been divorced from her husband can force the husband from the premises jointly owned, when the premises can be divided without prejudice to either party and the husband holds open an equal one-half of the premises to the wife as her lawful share? 3) Whether or not a debt or a lien of record can be charged upon the premises subject to an action in partition, and the amount of the debt paid to the creditor out of the proceeds of the public sale of the premises? 4) Whether or not an equitable lien, not of record, can be charged upon the premises subject to an action in partition? 5) Whether or not the master in this action in partition committed procedural errors which would nullify the *notice* of private sale and findings of fact issues by the master on May 20, 1978? 6) Whether or not the master erred in finding that the premises was incapable of division without prejudice under the facts of this case? 7) Whether or not appellant's exceptions should have been sustained by the Court of Common Pleas of Greene County?"

2. On first blush it would appear that appellant's exception number 5 would be reviewable now, but the trial court has yet to rule on it.

884 § 1, as amended May 17, 1949, P.L. 1394 § 1; 68 P.S. § 501.[3] Judith Recktenwald initiated the instant complaint in partition. From the record it would appear that Mrs. Recktenwald sought the partition for two reasons. The first, apparently, is to gain sole control over her rightful share of a significant asset of a now defunct marriage. The second reason appears to be the desire to ensure repayment of a substantial loan Pittsburgh National Bank made to the Recktenwalds, and for which Mrs. Recktenwald's now deceased mother, Katherine Carvlin,[4] had acted as surety, pledging certain of her stock holdings. The complaint alleges that the loan was made for the purpose of purchasing the land being partitioned, and that it was in fact used for that purpose. In responding to the complaint, James Recktenwald admitted the loan, and hence also the validity of the claim by the Carvlin Estate, but denied that the entire sum was used to purchase the real estate. He further alleged that a substantial portion of funds had been used by Judith Recktenwald for her own purposes, the nature of which were unknown to him. Subsequently, the Carvlin Estate itself petitioned to intervene. The chancellor, President Judge Glenn Toothman, dismissed the Estate's petition; by the same order he appointed Rosanna D. Polen, Esq., master in partition and ordered her to consider the claim of the Carvlin Estate as a valid claim against the proceeds of the sale of the property when it came time for their distribution, subject only to her determination of size of the Estate's claim.[5] The master proceeded to hold hearings to determine

3. 68 P.S. § 501 was amended again by the Act of April 28, 1978, P.L. 202, No. 53 § 2(a) [1092], which became effective June 27, 1980. The 1978 amendments did not affect the change in tenancy following divorce from entireties to in common.

4. Mrs. Carvlin's interests are herein pursued by her estate (Carvlin Estate), which has filed a brief as amicus curiae. Appellee has filed no brief.

5. The order reads:
"AND NOW, this 1st day of November, 1977, the court finding now that the matter is right for the appointment of a master in partition, orders and directs the appointment of same, who shall, when appointed, hold regular hearings with regard to this matter, and exer-

the value of the property. After having received the relevant evidence the master placed the value of the real estate at $62,495.00, including $17,685.00 for coal deposits unevenly distributed across the property. Because the coal is not evenly distributed, the master found that the land was not divisible without prejudice to one or the other of the parties. The master also placed the amount of the Carvlin Estate lien against the property to be $17,511.88 plus interest from January 1, 1978. James Recktenwald excepted both to the finding of nondivisibility of the realty and the amount and validity of the Carvlin Estate's claim.

President Judge Toothman characterized the problem in the instant case as a misapprehension of the nature of proceedings under the Act of 1927. Both parties and the master proceeded under the belief that a partition action under Section 501 of the Act is controlled by the Pennsylvania Rules of Civil Procedure, specifically Pa.R.C.P. 1551 *et seq.*, which dictate the procedure in ordinary partition actions. Rule 1558 requires that if a petition for partition is granted then the court "shall direct the parties or their attorneys to appear for a preliminary conference to consider (1) whether the parties can agree upon a plan for partition or sale. . . ." Pa.R.C.P. 1558(a)(1). Rule 1560 permits the division of the property being partitioned into proportionate shares, called purparts.[6] As the chancellor points out in his

cise the traditional duties and responsibilities of a master, the court ordering now the dismissal of the petition for the allowance to intervene. However, ordering and directing that the claim of the Carvlin Estate be considered as a valid claim by the master at the partition proceedings hearing and it to take its place in the regular statutory list of priorities at that time, subject only to the master determining by proof properly presented of the total amount of that claim due owing from the proceeds. The court directing further that the appraisal of J. Kenneth Willison, Jr. to be entered now and made part of the record, and that within ten (10) days from this date, a second appraisal be submitted and made also a part of the record and the costs of both appraisals be attached and made a part of the master's total accumulated costs in exercise of his duties and responsibilities."

6. Pa.R.C.P. 1560 reads:

RULE 1560. Property Capable of Division without Prejudice

able opinion below, the Rules of Civil Procedure directly conflict with the dictates of the Act of 1927 as amended. Section 501 provides that the method of partition of a statutorily created tenancy-in-common following divorce is the sale of the property and the division of the proceeds of the sale. Section 501 reads:

> Whenever any husband and wife, hereafter acquiring property as tenants by entireties, shall be divorced, they shall thereafter hold such property as tenants in common of equal one-half shares in value and either of them may bring suit in the court of common pleas, sitting in equity, of the county where the property is situate, against the other to have the property sold and the proceeds divided between them. The summons in such suit shall be served in the same manner and with like effect as in cases of partition at law.
>
> At the hearing on such suit both husband and wife shall be competent witnesses. The value of the property shall be proven by the testimony of at least two impartial and disinterested witnesses. 1927, May 10, P.L. 884 § 1; 1949, May 17, P.L. 1394 § 1. 68 P.S. § 501.

Furthermore, Section 503 of the same act reads:

> The proceeds of any sale had under the provisions of this act, after the payment of the expenses thereof, shall be equally divided between the parties, subject, however, to the deduction therefrom of the amount of any lien entered of record jointly against both of the respective parties, together with any interest due thereon and docket costs, which shall be paid by the trustee appointed by the court

If division can be made without prejudice to or spoiling the whole, the property shall be divided as follows:

(a) into as many purparts as there are parties entitled thereto, the purparts being proportionate in value to the interests of the parties;

(b) if it cannot be divided as provided in Subdivision (a), then into as many purparts as there are parties entitled thereto, without regard to proportionate value;

(c) if it cannot be divided as provided in Subdivisions (a) or (b), then into such number of purparts as shall be most advantageous and convenient without regard to the number of parties.

Adopted April 26, 1955, effective Nov. 1, 1955.

to make sale of such property to the person or persons to whom the same is due and payable, and the amount of any liens entered of record against either of such parties, together with interest due and costs taxed thereon, shall be deducted from the share of the party against whom such lien is filed, and paid by such trustee to the person or persons to whom the same is due and payable. . . . 68 P.S. § 503.

Finally, the Rules of Civil Procedure specifically provide that the Act of 1927 is not suspended or affected by Rules 1551 *et seq.* See Pa.R.C.P. 1590.

■ Clearly, the finding of the master concerning the divisibility of the real estate was superfluous to the partition proceeding in this case. As President Judge Toothman said in his opinion below:

. . . It is evident that the legislature recognized that in the enactment of the Act of 1927, there would be enough areas for disgruntled spouses to quarrel over, without leaving open which spouse got the north half of the farm or the south half, and made a specific directive of authority for the proceeding to separate each of them from the duty or privilege to do so, leaving them each, still, if they care to do so, the right to purchase the whole.

■ Appellant additionally argues that the findings of the master concerning the amount of the Carvlin Estate's claim are in error. We do not reach the merits of appellant's argument for we find them to be prematurely presented to us for consideration. Section 503 of the Act of 1927 provides that claims by record lien holders shall be deducted from the proceeds of the sale of the real estate. Section 502 provides that the master or trustee shall submit the order of sale to the court for its confirmation. At the time the court is to consider the confirmation of the sale and partition of the proceeds it will necessarily have the opportunity to pass on the validity of all lien holders' claims. Instantly, there has been no sale of the property, nor a proposed partition of the proceeds, nor has the court below considered the amount of the Carvlin Estate's claim as determined by the master. It

has only ruled that the Estate has a valid claim—as admitted in the pleadings by the appellant—although the amount of the claim is unresolved. The chancellor's order neither puts appellant out of court, nor does. it finally decide the issue. The order must therefore be interlocutory in nature. *Piltzer v. Independence Fed. Sav. & Loan Ass'n*, 456 Pa. 402, 319 A.2d 677 (1973). It is axiomatic that an appeal will be only from a final order unless the Legislature otherwise provides. *Caplan v. Keystone Weaving Mill*, 431 Pa. 407, 246 A.2d 384 (1968). Appellant asserts no appeal as of right, Pa.R.A.P. 311, nor has he met any of the requirements for the permissible appeal of an interlocutory order, Pa.R.A.P. 312 and Pa.R.A.P. 1301 *et seq.*

In light of the foregoing, we affirm that portion of the chancellor's order which dismisses James Recktenwald's exception to the master's findings of fact on the question of the divisibility of the land, and we dismiss the appeal from the remaining portions of the order as an impermissible appeal from an interlocutory order. That part of the order of the hearing court which is reviewable at this time is affirmed, and the case is remanded for further proceedings not inconsistent with this opinion.